Colin J. MacLeod and Katharine MacLeod v. Commissioner.
Colin J. MacLeod v. Commissioner
Docket No. 9701.
United States Tax Court
1948 Tax Ct. Memo LEXIS 260; 7 T.C.M. (CCH) 37; T.C.M. (RIA) 48011; January 30, 1948
*260 Stanley Worth, Esq., for the petitioners. Melvin L. Sears, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves an income tax deficiency in the amount of $6,764.24 for the year 1941. The contested issue is whether the sum of $25,164.69 received by petitioner Colin J. MacLeod in 1941 was taxable as ordinary income as held by respondent or as a long-term capital gain represented by the sale of a partnership interest as contended by petitioner. The case was submitted on a stipulation of facts, supplemental stipulation, oral testimony and documentary proof. The facts as stipulated are so found. Such parts thereof as it is considered necessary to set forth are included with other facts found from evidence adduced in our Findings of Fact Colin J. MacLeod (hereinafter referred to as petitioner) and his wife Katharine MacLeod resided at Middleburg, Virginia, and filed a joint income tax return for the year 1941 with the collector of internal revenue for the district of Virginia, at Richmond, Virginia. Petitioner entered the internal revenue service in 1904 and left the service in 1929, at which time he was *261 Revenue Agent in Charge in the Boston Division. William E. Hayes is a certified public accountant and was a partner in Fox, Hayes and O'Brien prior to July 1, 1933, in Boston. About July 1, 1933, petitioner and Hayes entered into a business arrangement for the handling of tax matters under the name of William E. Hayes & Co. (hereinafter referred to as the company). Income from business originating with Hayes was to belong wholly to Hayes. Income from business brought in by petitioner was to be divided between petitioner and Hayes equally. Petitioner was to share in the expenses of the office to the extent of one-half the rent, stenographer's salary, telephone and electric light bills. Petitioner was not to pay any part of the salaries of other assistants in the office except to the extent their work was devoted to business produced by him. There was no written agreement with respect to the operation of this business. Petitioner prepared a partnership instrument but Hayes refused to sign it. Petitioner and Hayes were partners until early in 1940. The door of the office of the company bore the names of Hayes, petitioner and Burnet. The latter was a former Commissioner of Internal *262 Revenue, with offices in Washington, D.C. He had no connection with the company other than letting his name be used on the announcement cards and the legend on the door for whatever prestige that might be achieved. Announcement cards bore the three names, giving their previous connections and the following information: "Announce the opening July 1, 1933 of offices for the practice in federal taxation and other governmental matters before the federal departments and bureaus 60 Congress Street, Boston, Massachusetts, Phone Liberty 8280" The letterheads of the company referred to the organization as certified public accountants. Petitioner was not a certified public accountant. Petitioner and Hayes each contributed about $1,500 or $1,600 to the capital of the above-mentioned business venture. The original capital contribution, about $2,000, was used to buy furniture, tax services, and to cover expenses until they started receiving fees. Depreciation claimed up to 1941 had reduced this investment to a comparatively small amount. Partnership returns, Form 1065, were filed for the company for the years 1935 to 1940, inclusive. Each of these returns was signed by Hayes and showed *263 Hayes and petitioner as partners. The returns for 1935 and 1936 contained a statement that the business or profession of the "partnership" was "certified public accountants"; the returns for 1937, 1938 and 1939 showed it as "public accountants"; while the return for 1940 left the space to indicate "business or profession" blank. Each of the returns showed the date of the organization as 1933. Howard C. Davis, John Clark, petitioner and Hayes formed Old Harbor Kennel Club in 1935, about the time of the lecializing of pari-mutuel betting in Massachusetts. Clark was the majority stockholder and one of the two managers of the track. Application was made for a permit to erect a dog track on land held by Davis in South Boston. Objectors appeared at the hearing on the application for the permit. Bay State Kennel Club was organized by other persons in Cambridge who tried to get a permit to operate a dog track near Harvard College. That also ran into objections. The Governor of Massachusetts called both groups to the State House and suggested Wonderland Park at Revere, and certain land which could be purchased in Revere. As a result of that conference Old Harbor Kennel Club and the Bay *264 State Kennel Club got together and bought the property known as Wonderland Park. Each owned 50 per cent of the resulting real estate company, Wonderland Amusements, Inc. Revere Racing Association, Inc., (hereinafter referred to as Revere) is the outgrowth of three corporations: The Old Harbor Kennel Club and the Bay State Greyhound Corporation (operating companies) and Wonderland Amusements, Inc. In 1940 or 1941 these companies all merged into Revere. Hayes was elected treasurer of Old Harbor Kennel Club in 1935 at a salary of $15,000 per annum. Old Harbor Kennel Club kept its books on a fiscal year basis ending April 30. Hayes' salary for the Old Harbor Kennel Club's fiscal year ending April 30, 1936, was included in the income of the William E. Hayes & Co. for 1935. A dispute ensued as to whether this salary should be divided between Hayes and petitioner and after some discussion, for the sake of amity, it was divided fifty-fifty. Hayes received $20,000 per year salary from Old Harbor Kennel Club as treasurer for the fiscal years ending April 30, 1937, 1938, 1939 and 1940, but these amounts were not included in the income of the company. Petitioner received a letter in 1940 *265 from the Massachusetts Income Tax Department stating that petitioner was subject to tax by the Commonwealth of Massachusetts since he had a home at Cape Cod, had his name on the door, and was doing business in Boston. Petitioner stated to Hayes that he was going to get out, and scratched his name off the plate glass of the door. About the same time petitioner said: "I am through" and walked out. Previous to that time, and about 1938, petitioner had moved to Virginia and only went to Boston about once a month. He was not occupying any portion of the offices of the company in 1941 and there were then in the office no income-producing cases which petitioner had brought in. Late in 1940 petitioner consulted his attorney about a proposed suit for an accounting against Hayes. Petitioner's attorney drew a bill of complaint for an accounting and notified Hayes of petitioner's claim. It was never filed. Petitioner's claim, as set forth in the complaint, was, in effect, that MacLeod and Hayes had been partners from 1933 to the early part of 1940, "at which time the partnership ceased to do business"; that they had agreed "to share equally the profits from all business brought into the firm *266 by the plaintiff" (MacLeod); that Hayes had "refused to disclose how much was received from said business," and refused to account "for the amounts received from the business brought to the firm by plaintiff"; and that "large sums of money belonging to the partnership account" had been collected by Hayes, for which he refused to account or turn into the partnership account. No particular sum of money was named in the complaint. Accounting was asked, also injunction and restraint against transfer by Hayes of partnership property or funds, pending final determination of the action. The contention of the petitioner was that Hayes had omitted some $180,000 of income from the annual statements of the company with respect to which petitioner felt he was entitled to one-half. Of this amount $80,000 was claimed to be salary from Old Harbor Kennel Club. The petitioner had told his attorney that he would be satisfied with something around $25,000 net to him, after fees and expenses were deducted. Edward J. Keelan, Jr., was attorney for Revere during 1940-1941. He had been trying to close up the tax difficulties of the predecessor companies merged into Revere. Revere's dog track license was *267 suspended in 1940 and was restored as the results of Keelan's efforts. Hearing on application for a new license for dog racing was to be heard in the spring. Keelan felt that there had been enough publicity without having any more in rows between stockholders. He told Bottomley, attorney for Old Harbor Kennel Club, and Reynolds, track manager for Bay State Greyhound Racing Association, that unless Revere settled the case (between petitioner and Hayes), he would withdraw as counsel. At that time Old Harbor Kennel Club was charged with civil fraud and the Department of Justice was considering criminal prosecution. Negotiations between the attorneys for the parties resulted in an offer to settle the claim for $40,000. Hayes was called to the offices of Revere in late December 1940 or early January 1941 and discussed the claim with Bottomley and Reynolds. At this meeting, Hayes was asked if he intended to go to court on petitioner's claim and Hayes said he did. Then Bottomley and Reynolds suggested that Hayes pay $14,000 and that they each pay $13,000 of the $40,000 settlement for petitioner's claim and that the dog track would reimburse the whole $40,000 some time during the summer. *268 Hayes received checks from Bottomley and Reynolds in the amount of $13,000 each. He added his own check for $14,000 and delivered all three checks to petitioner's attorney. After deducting his fee and certain other charges, petitioner's attorney deposited the balance of $25,164.69 to petitioner's account under date of January 27, 1941. Under date of January 23, 1941, petitioner gave releases to Hayes, Old Harbor Kennel Club and Revere. Each of these releases showed consideration of "one dollar and other valuable consideration paid by the person or organization to whom the release was given. The release given to Old Harbor Kennel Club and Revere were general releases, not specifying any particular claim while the one given to Hayes contained the following in the release clause: "Particular reference being made to an accounting of the partnership of William E. Hayes & Company, in which firm William E. Hayes and I were co-partners." On August 29, 1941, a meeting of the directors of Revere was held at which $40,000 was authorized for payment to Hayes in the form of $15,000 for special auditing services and $25,000 on account of the amount paid by him to the petitioner. Revere drew *269 its check to Hayes in the amount of $40,000 on August 29, 1941. Hayes cashed the check, gave Bottomley and Reynolds $13,000 each, and deposited $14,000 in his own bank account. On the books of account of Revere, the check for $40,000 was shown as a debit of $15,000 to "audit expenses," a debit of $25,000 to "executives account," and a credit of $40,000 to "cash." The $25,000 debited to "executives account" was not used as a deduction from gross income by Revere on its Federal income tax returns. In addition to the $40,000, hereinbefore referred to, there was paid to Hayes by Revere, $15,000 in 1941, as follows: Hayes was on the payroll of Revere at the rate of $100 per night during its 1941 season of 100 nights during the summer months. These payments of $100 per night, totaling $10,000 were paid to Hayes from the weekly payroll in cash, and a check in the amount of $5,000 was issued to Hayes on December 29, 1941. At all times material to this proceeding, all the voting stock of Revere stood in the name of voting trustees. At all times during the year 1941 the voting trustees were petitioner, Bottomley, Edward M. Gallagher and Adhah Neyhart. Petitioner reported the $25,164.69 *270 in his 1941 income tax return as a long-term capital gain as a "settlement of suit on partnership dissolution," the "date acquired" is shown as July 1, 1933, and the "date sold" is shown as January 27, 1941. There was no "cost or other basis" shown in the return as to this item. Opinion The only issue is whether the respondent erred in determining that petitioner received the sum of $25,164.69 in 1941 as ordinary income. Petitioner contends that he sold his interest in a partnership composed of himself and Hayes and that the net amount received was a long-term capital gain. The petitioner argues that the usual presumption in favor of the correctness of the Commissioner's determination does not here apply, because of introduction of evidence inconsistent therewith; further, that such evidence was beyond the pleadings filed. We do not agree. The evidence was as to how the money was raised to pay the petitioner involving the parties interested with Hayes in the dog-racing business, and whether avoidance of publicity was a reason for paying petitioner. It was not irrelevant on the prime question, that of whether petitioner received ordinary income or capital gain, and we regard it *271 neither outside the pleadings nor a new issue - depriving the determination of its usual presumption of correctness. Petitioner avers and respondent denies that the business arrangement between petitioner and Hayes was a partnership. Petitioner and Hayes entered into a business arrangement in 1933 in which in general the expenses of the office were to be divided equally, and income produced by Hayes was to be his, while income from clients brought in by petitioner was to be divided fifty-fifty. In our opinion, there was partnership, limited to business brought in by the petitioner. Hayes so reported on income tax returns for several years, and the facts before us bear out such statement. The partnership arrangement terminated early in 1940. Regardless, however, of the proper character of the business, that question is secondary, and the decisive issue is: For what was the $25,164.49 received? After examination of all of the evidence, we have concluded and hold that the $25,164.69 received by the petitioner was ordinary income, and not capital gain. Many reasons lead us to that conclusion. Ordinarily a sale would be evidenced by a bill of sale, and involve and convey definite assets. *272 Nothing of the kind here appears, and it is noticeable that there is nowhere any contention that property had been acquired by the partners (except the comparatively small amount of office furnishings). The accent throughout was upon income allegedly earned and unaccounted for by Hayes. Petitioner and Hayes each contributed some $1,500 or $1,600 to the capital of the partnership, but due to depreciation claimed from 1933 to 1940, the basis of the assets purchased with part of the capital was reduced to a comparatively small amount. It is evident that petitioner did not consider the small amount of office assets as part of the partnership interest allegedly sold, for in calculating the longterm capital gain on the alleged sale of his interest in his 1941 income tax return, he did not use any cost basis. Nothing in the releases executed mentions the partnership assets, physical or otherwise. Without further evidence, petitioner has not proved that the assets of the company constituted any substantial part of "partnership" interest that he contends he sold to Hayes. Petitioner moved to Virginia about 1938 and only went to Boston about once a month. He was not occupying any portion of *273 the offices of the company in 1941 and there were no cases in the office which he had brought in which were producing income. The complaint alleges that the partnership had ceased to do business early in 1940. Petitioner had "walked out." There was, therefore, no prospect of future income on the part of petitioner, from the company for his only source of income in this regard was under the business arrangement heretofore described, whereby he had to produce clients to receive income. Without further proof of receipt of the $25,164.69 in consideration of property or an interest in the business, we are not convinced that petitioner had anything in the company to sell, or sold anything. Evidence produced by the respondent and substantiated, in part, by petitioner's own evidence, leads us to believe that the $40,000 payment was made in settlement of a complaint petitioner had against Hayes. The complaint was drawn by petitioner's attorney in contemplation of a proposed suit for an accounting against Hayes. Drawn by petitioner's attorney, prior to the present litigation, it appears the most reliable evidence as to the nature of petitioner's claim, and therefore of his recovery. It recites *274 that the partners were to divide "profits" and refers to the business brought in, the "sums of money" collected, and asks accounting of the business carried on. Nothing is said as to dissolution or division of any physical properties. In our view, the complaint plainly is intended to involve profits and income; there is no mention of physical property, or of any property, except the general term "property or funds" against transfer of which restraint is asked. Petitioner claimed that Hayes had omitted some $180,000 of income from the annual statements of the company with respect to which he felt that he was entitled to one-half. The explanation given to identify $80,000 of the $180,000, was that petitioner claimed one-half of the salary received by Hayes as treasurer of Old Harbor Kennel Club. Petitioner claimed and was paid half of the first $15,000 salary Hayes received as treasurer of Old Harbor Kennel Club. The only explanation accompanying the remaining $100,000 was that it was income received by Hayes but not reported. It is also noted that when petitioner was being questioned about the basis of this complaint, there was no mention of any claim for any investment in assets in *275 the company. The release given to Hayes by petitioner under date of January 23, 1941, leads us to believe that the payment made about that time was made in settlement of the complaint and as has been stated, the complaint was based on an accounting of income. Further reason to believe that the payment of the $40,000 was in settlement of the complaint is the fact that the dog-racing companies, with which petitioner and Hayes were connected were in such a position that further publicity of litigation between stockholders would hinder rather than help further the interest of such companies. It is clear to us from the record that payment of the money petitioner received was actuated, not by a desire to secure petitioner's interest in the partnership (which had already terminated), but by a desire to avoid publicity by paying him along the lines of the complaint prepared by his attorney and discussed with Hayes' attorney, and the parties engaged in the dog-racing business, which was having tax difficulties. Such receipt of money is not by way of sale of capital assets. "It is settled that since profits from business are taxable, a sum received in settlement of litigation based upon a *276 loss of profits is likewise taxable * * *." . The same is true in the instant case. Petitioner claimed that certain income (or profit) came into the hands of Hayes and that he was entitled to one-half of it. Any settlement made on that assumption would, according to the Durkee case, be income when received. Decision will be entered for the respondent.